UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARGONAUT INSURANCE CO.,

        Plaintiff,

v.                                          Case No. 09-C-613

DAVEL ENGINEERING, INC. and
RIVER VALLEY ONE, LLC,

        Defendants.

## DECISION AND ORDER

Plaintiff Argonaut Insurance Company brought this declaratory judgment action seeking a declaration that it owes no coverage for a claim made by Defendant River Valley One, LLC ("RVO") against Argonaut's insured, Davel Engineering, Inc. RVO moved to dismiss on the basis that Argonaut had not stated any claim against it and it had no privity with respect to the insurance policy between Argonaut and Davel. In its reply brief, RVO further asserted that it had recently filed an action in state court naming both Davel and Argonaut. It now argues that this case should be dismissed so that the state court action, which would address both liability and coverage, can proceed.

There is some question as to whether, under Wisconsin law, an insurer may bring a declaratory judgment action against both its insured and a party who has not yet filed an action against the insured. Wisconsin law clearly prefers the scenario under which the aggrieved party brings a lawsuit against the insured and the insurer intervenes (or is sued directly) and moves for a coverage decision and a stay of the remainder of the action. *Liebovich v. Minnesota Ins. Co.,* 2008

WI 75, 310 Wis.2d 751, 784, 751 N.W.2d 764, 779 (Wis. 2008). But that is not the only method for handling coverage disputes; an insurer may also attempt to resolve coverage issues by seeking a declaratory judgment. *See* Wis. Stat. § 806.04; *Baumann v. Elliott,* 2005 WI App 186, 286 Wis.2d 667, 678, 704 N.W.2d 361, 366 (Wis. Ct. App. 2005). But in the typical declaratory judgment case, the insurer brings an action only against its insured. *See, e.g., Zarder v. Humana Ins. Co.,* 2009 WI App 34, 316 Wis.2d 573, 579, 765 N.W.2d 839, 841 (Wis. Ct. App. 2009). As Argonaut notes, however, the Wisconsin Supreme Court sanctioned an action against both the insured and the aggrieved party in *Fire Insurance Exchange v. Basten,* 202 Wis.2d 74, 549 N.W.2d 690 (Wis. 1996). In that case, however, there was an underlying state court action in which the insurer had not been named. RVO posits that that distinction is significant because the Court's language authorizing the procedure was quite specific:

> We hold that when an insurer, *not named in the underlying lawsuit*, seeks a judicial declaration of its rights and obligations under a contract of insurance in accord with Wis. Stat. § 806.04, the plaintiff and any other party who has brought a claim against the insured in the underlying lawsuit, is an "interested person" for purposes of Wis. Stat. § 806.04(11) and required to be made a party to the separate declaratory judgment proceeding.

*Id.* at 698 (italics added).

Because there was no "underlying lawsuit" at the time this action was filed, RVO argues, *Basten* does not apply. Moreover, here the insurer *is* named in the state lawsuit RVO subsequently filed. As such, *Basten* should not apply. Yet although *Basten* did involve an underlying lawsuit in which the insurer was not named, that Court was merely applying Wis. Stat. § 806.04(11), which requires "interested persons" to be named in declaratory actions. RVO had a grievance with Argonaut's insured, and under the facts of this case the grievance sufficed to make RVO an

2

interested person. This is underscored by the fact that RVO filed a lawsuit against Davel less than two months after this action was filed. In short, contrary to RVO's suggestion, *Basten* was not such a narrow holding. Nothing within the decision suggests that RVO would be an improper party in a state declaratory action simply because there was no underlying lawsuit at the time the action was filed; nor is it improperly joined merely because the insurer *was* named in a lawsuit that RVO itself subsequently filed.

But even though Wisconsin law would likely allow a declaratory action like this one, I am not satisfied that this case belongs in federal court. As the Supreme Court noted in *Wilton v. Seven Falls Co.,* "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* Given the pendency of a parallel state action that could resolve both coverage and liability issues – both questions of state, rather than federal, law – I conclude that this case is not the sort of action that calls out for the "remedial arrow" of a federal declaratory judgment.

Courts routinely decline to hear declaratory actions when there is a "natural" plaintiff who has filed a separate action in another venue. For example, in *Newell Operating Co. v. International Union of United Auto., Aerospace, and Agr. Implement Workers of America,* the district judge declined to hear the declaratory action on the basis that the "natural plaintiffs" had filed a lawsuit in another jurisdiction only a month after the declaratory action was filed. 532 F.3d 583, 591 (7th Cir. 2008). The Seventh Circuit affirmed, noting that courts are normally "wary" of declaratory actions that wrest control of the forum from the natural plaintiffs. *Id.*

3

Whereas *Newell* and similar cases involve "mirror image" federal actions in different federal venues, courts have been especially reluctant to hear declaratory actions when parallel proceedings are underway in *state* court. For example, in *Brillhart v. Excess Ins. Co. of America,* a re-insurer brought a declaratory action in federal court, and subsequently the injured party filed a Missouri state garnishment action that made the re-insurer a party. 316 U.S. 491, 492-93 (1942). The district judge dismissed the action on the ground that the state action was then pending. On appeal, the Supreme Court found that there was some question about whether the questions raised in the federal action could have been resolved in the Missouri garnishment action, and it remanded to the district court for that question to be considered. The premise of the Supreme Court's remand was that if full relief could be afforded in the state proceedings, a district court should generally decline to hear the declaratory action:

> The motion [to dismiss] rested upon the claim that since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court was unwarranted. The correctness of this claim was certainly relevant in determining whether the District Court should assume jurisdiction and proceed to determine the rights of the parties. Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* at 494-495.

Thus, among the key considerations for a district court considering whether to hear or dismiss a declaratory action is "whether the claims of all parties in interest can satisfactorily be adjudicated in that [state] proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* at 495. The Supreme Court reaffirmed

4

this principle in *Wilton*, *supra*, finding that "the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." 515 U.S. at 290.

Here, there is no dispute that the coverage question may be considered in the state case. As discussed above, such questions are routinely considered and decided by state courts, and in fact allowing the state court to decide the coverage question would allow the state courts' preferred procedure – bifurcation of coverage and liability – to take place. Courts frequently decline to hear declaratory actions under similar circumstances, and I am not persuaded that this case is any different. *See, e.g., Nissan North America, Inc. v. Andrew Chevrolet, Inc.,* 589 F. Supp.2d 1036, 1040 (E.D. Wis. 2008); *Medical Assur. Co., Inc. v. Weinberger,* 572 F. Supp.2d 995, 1001 (N.D. Ind. 2008); *State Auto. Mut. Ins. Co. v. Reed,* 2008 WL 885881, *1 (S.D. Ind. 2008) ("As a general rule, a federal court should dismiss or stay a declaratory judgment action where a closely parallel action is pending in state court and offers an appropriate and timely forum for resolving the claims and issues pending before the federal court.")

There is something more here. In many cases, such as *Wilton*, the two parties (the insurer and its insured) are of diverse citizenship, and so there is no question about federal jurisdiction. Here, however, we have a third party, RVO. Although RVO is diverse with respect to Argonaut (which allows diversity jurisdiction), it is *not* diverse with respect to its co-defendant, Davel Engineering. That might not be particularly noteworthy except for the fact that RVO is the "natural" plaintiff and Davel Engineering is the natural defendant. According to the complaint, both companies are located in the Fox Valley, and the dispute involves Davel's surveying of land in Appleton. This is, therefore, a case involving a quintessentially local dispute and a question about

5

insurance coverage, a matter over which the states regulate and handle routinely in their courts. Had things taken their normal course, this case would not be heard in federal court at all because the natural plaintiff and defendant are both Wisconsin citizens. It is only because Argonaut, the out-of-state insurer, filed this declaratory action that we are here.[1] And when a declaratory action is not so much a vehicle for securing venue as it is for securing *jurisdiction,* it seems that much more prudent to allow the state courts to handle an action that is in every other respect a typical state court case. *Dixon v. Progressive Northern Ins. Co.,* 2008 WL 4072816, *2 (W.D. Pa. 2008) ("Significantly, the sole issue of insurance coverage in this case presents no federal questions, nor promotes any federal interest. The requested relief would require the Court to apply well-settled state law. This weighs heavily against the Court exercising jurisdiction over this declaratory judgment action.")

For the reasons given above, the motion to dismiss is **DENIED**, but this case is **STAYED** pending the outcome of the state litigation.[2] The motion to file a sur-reply is **GRANTED**.

**SO ORDERED** this 10th day of September, 2009.

      s/ William C. Griesbach  
      William C. Griesbach  
      United States District Judge

---

[1] I do not imply that Argonaut has engaged in any kind of legal gamesmanship at all. At the time this lawsuit was filed, it was not clear whether RVO was going to file its own action. And as Argonaut notes, the "claims" nature of the policy may have been triggered even if no lawsuit were ever filed. As such, it cannot be faulted for seeking to obtain a swift resolution of the issue.

[2] *Wilton,* 515 U.S. at 288 n. 2 ("where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.")

6

Case 1:09-cv-00613-WCG   Filed 09/10/09   Page 6 of 6   Document 16